UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL L. LOGAN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>   v.<br><br>UNION PACIFIC RAILROAD CO., a Delaware Corporation,<br><br>                    Defendant.<br><br> and<br><br>GREGORY NEAL GONZALES, individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>   v.<br><br>BNSF RAILWAY COMPANY,<br><br>                  Defendant. | NO: 2:17-CV-0394-TOR<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR JUDICIAL NOTICE |

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS AND MOTION FOR JUDICIAL NOTICE ~ 1

BEFORE THE COURT is Defendants BNSF and Union Pacific's Motion for Judgment on the Pleadings (ECF No. 35) and a corresponding Motion for Judicial Notice (ECF No. 36). This matter was submitted for consideration with oral argument and a telephonic hearing was held on June 7, 2018. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Defendants' Motion for Judgment on the Pleadings (ECF No. 35) and Motion for Judicial Notice (ECF No. 36) are **granted**.

## BACKGROUND

Plaintiffs Michael Logan and Gregory Gonzales, personally, and on behalf of others similarly situated, brought separate suits against Union Pacific Railroad Company and BNSF Railway Company, respectively. Case Nos. 4:17-CV-5193; 2:17-CV-0394-TOR. The Court consolidated the two cases, finding both cases involve identical issues of law and nearly identical issues of fact. Case Nos. 4:17-CV-5193, ECF No. 30; 2:17-CV-0394-TOR, ECF No. 30 at 4. In both suits Plaintiffs allege that Defendants failed to provide ten-minute rest periods to employees for every four hours of work as required by Washington Administrative Code § 296-126-092, and thus conclude Defendants must pay hourly and separate wages for the missed rest periods pursuant to Title 49, Chapter 12 of the Revised Code of Washington. Case Nos. 4:17-CV-5193, ECF No. 1-1 at 9-14, ¶¶ 12, 25-38; 2:17-CV-0394-TOR, ECF No. 1-1 at ¶¶ 1, 24-37.

Defendants filed a Motion for Judicial Notice (ECF No. 36) and a Motion for Judgment on the Pleadings (ECF No. 35), arguing the state law requiring rest periods is preempted by federal law as applied to railroad employees. Plaintiffs oppose the Motion. ECF No. 38. This Motion is now before the Court.

## REQUEST FOR JUDICIAL NOTICE

Defendants request the Court take judicial notice pursuant to Federal Rule of Evidence 201 of:

1. Order entered on April 10, 2018 in *Sumlin v. BNSF Railway Company*, 5:17-CV-2364-JFW (KKx) (C.D. Cal. 2018), publicly available on the court's docket at entry number 66.
2. The Federal Railroad Administration's *Hours of Service Compliance Manual—Freight Operations* (Dec. 2013), publicly available on the website of the United States Department of Transportation at https://www.fra.dot.gov/eLib/details/L04876.
3. The Federal Railroad Administration's *Operating Practices Compliance Manual* (Nov. 2012), publicly available on the website of the United States Department of Transportation at www.fra.dot.gov/eLib/details/L04093.
4. The Federal Railroad Administration's *Hours of Service Compliance Manual—Freight Operations* (Dec. 2013), publicly available on the website of the United States Department of Transportation at www.fra.dot.gov/eLib/details/L04876.
5. The Federal Railroad Administration's *Operating Practices Compliance Manual* (Nov. 2012), publicly available on the website of the United States Department of Transportation at www.fra.dot.gov/eLib/details/L04093.
6. The Washington State Department of Labor & Industries' web page entitled *Rest & Meal Periods: What Are the Rest Break and Meal Period Requirements for Adult Workers?*, publicly available on the website of the Washington State Department of Labor & Industries at https://www.lni.wa.gov/WorkplaceRights/Wages/HoursBreaks/Breaks/.

ECF No. 36 at 2. At the hearing, Plaintiffs stated they did not oppose the Motion for Judicial Notice, but dispute the precedential effect of the district court opinion.

Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record"). On motions for judgment on the pleadings, a court may take judicial notice of records and reports of administrative bodies. *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008) (quotation marks and citation omitted). Accordingly, the Court **grants** Defendant's request for judicial notice (ECF No. 36).

## DISCUSSION

Defendants argue the Washington law regulating rest-periods is preempted by federal law as applied to railroad employees. Defendants put forward three arguments in favor of preemption. First, Defendants argue the rest-period claims

are barred by field preemption, reasoning federal law occupies the field of hours of work and rest for railroad employees, and that Washington's rest-period laws intrude into this field. ECF No. 35 at 11-17. Second, Defendants argue the Federal Railroad Safety Act (FRSA) expressly preempts Plaintiffs' rest-period claims because the Washington law relates to railroad safety as applied to railroads. ECF No. 35 at 22-26. Third, Defendants argue the Adamson Act preempts Plaintiffs' rest-period claims because the Washington law mandates additional compensation where federal law expressly provides that all matters of compensation are settled exclusively by statute and private negotiations. ECF No. 35 at 27-28. The Court agrees and addresses each argument in turn.

A. **Field Preemption**

Defendants contend that Plaintiffs' rest-period claims are barred by field preemption. ECF No. 35 at 17-27. Defendants argue that federal law – namely, the federal Hours of Service Act (HSA) – occupies the field of hours of work and rest for railroad employees and Washington's law improperly intrudes into this field. Plaintiffs argue Washington's rest-period laws are not preempted because (1) the Washington rest-period laws are written in general terms, in contrast to a law that expressly regulates the railroad or its employees and (2) federal law only occupies rest periods before and after work periods, whereas the Washington law only regulates rest periods during a work period.

"The relative supremacy of the state and national power over interstate commerce need not be commented upon. Where there is conflict, the state legislation must give way. Indeed, when Congress acts in such a way as to manifest its purpose to exercise its constitutional authority, the regulating power of the state ceases to exist." *Erie R. Co. v. People of State of New York*, 233 U.S. 671, 681 (1914). Under "field" preemption, state law is preempted "when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). "Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985). "[T]he mere volume and complexity of federal regulations demonstrate an implicit congressional intent to displace all state law." *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008).

"It has long been settled that Congress intended federal law to occupy the field of locomotive equipment and safety[.]" *Law v. Gen. Motors Corp.*, 114 F.3d 908, 910 (9th Cir. 1997). "Railroads have been subject to comprehensive federal regulation for nearly a century." *United Transp. Union v. Long Island R.R. Co.,* 455 U.S. 678, 687 (1982), overruled on other grounds by *Garcia v. San*

*Antonio Metro. Trans. Auth.*, 469 U.S. 528 (1985). Indeed, "[p]erhaps no industry has a longer history of pervasive federal regulation than the railroad industry." *R.J. Corman R.R. Co./Memphis Line v. Palmore*, 999 F.2d 149, 151 (6th Cir. 1993) (citation omitted). "Without doubt, Congress has undertaken the regulation of almost all aspects of the railroad industry, including rates, safety, labor relations, and worker conditions." *Id.* at 152. "These laws have touched on nearly every aspect of the railway industry, including property rights, shipping, labor relations, hours of work, safety, security, retirement, unemployment, and preserving the railroads during financial difficulties . . . ." *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 762 (7th Cir. 2008) (citing *R.J. Cormann R. Co.*, 999 F.2d at 151-52). "[M]uch of this federal legislation has been found to preclude state regulation over the railways." *Id.* at 763.

Of particular importance to this case is the HSA, which authorizes the Secretary to prescribe regulations "to reduce the maximum hours an employee may be required or allowed to go or remain on duty", "to increase the minimum hours an employee may be required or allowed to rest", and "to require other changes to railroad operating and scheduling practices . . . that could affect employee fatigue and railroad safety[,]" *inter alia*. 49 U.S.C. § 21109(a). The HSA provides that "[t]he number of hours established by this chapter that an employee may be required or allowed to be on duty is the maximum number of hours consistent with

safety. Shorter hours of service and time on duty of an employee are proper subjects for collective bargaining between a railroad carrier and its employees." 49 U.S.C. § 21107. As the Federal Railroad Administration ("FRA") has explained, the "[f]ederal laws governing railroad employees' hours of service . . . are intended to promote safe railroad operations by limiting the hours of service of certain railroad employees and ensuring that they receive adequate opportunities for rest in the course of performing their duties." 74 Fed. Reg. at 25,330.

In *N. Pac. Ry. Co. v. State of Washington ex rel. Atkinson*, 222 U.S. 370, 376 (1912), the Supreme Court held the HSA preempted "a law of the state of Washington regulating the hours of service[.]" Although the Court did not go "into detail[,]" the Court noted that it "suffices to say that the provisions of that act greatly resembled those of the act of Congress, and prohibited the consecutive hours of service which had taken place[.]" *Id.* In deciding, the Supreme Court recounted the source of the legislature's power and the preemptive reach when it acts:

> [T]he power of the Congress to regulate interstate commerce is plenary; and that, as an incident to this power, the Congress may regulate by legislation the instrumentalities engaged in the business, and may prescribe the number of consecutive hours an employee of a carrier so engaged shall be required to remain on duty; and that when it does legislate upon the subject, its act supersedes any and all state legislation on that particular subject."

*Id.* at 377. The Court then concluded: "as the enactment by Congress of the [HSA] was an assertion of its power, by the fact alone of such manifestation that subject was at once removed from the sphere of the operation of the authority of the state." *Id.* at 378.

Just two years later, in *Erie R. Co. v. People of State of New York*, the Supreme Court held the HSA preempted a New York law purporting to limit railroad employees to an eight-hour work day where the HSA allowed railroad employees to work a nine-hour work day or longer in certain circumstances. 233 U.S. at 678, 683. In deciding, the Court recognized the HSA is Congress's judgment on what is necessary for safety and this judgment "admits of no supplement":

> Regulation is not intended to be a mere wanton exercise of power. It is a restriction upon the management of the railroads. It is induced by the public interest or safety, and the 'hours of service' law of March 4, 1907, is the judgment of Congress of the extent of the restriction necessary. It admits of no supplement; it is the prescribed measure of what is necessary and sufficient for the public safety, and of the cost and burden which the railroad must endure to secure it.

*Id.*, 233 U.S. at 683.

The Court finds that (1) the HSA occupies the field of hours of work and rest for railroad employees and (2) Washington's regulation of work hours requiring a ten-minute rest period improperly intrudes upon this domain. The exhaustive federal regulation of work and rest periods demonstrates that federal law occupies

the field of rest and work periods for railroad employees, precluding state regulation of such. *See S. Ry. Co.*, 236 U.S. 439, 447 (1915) ("[C]ongressional legislation as to hours of service so completely occupie[s] the field as to prevent state legislation on that subject."). It is clear that the Washington law at issue implicates this field and is thus preempted, as it attempts to regulate the rest and work periods of railroad employees.

Plaintiffs argue the Washington law falls outside the field of "hours of work and rest for railroad employees[.]" ECF No. 38 at 13. The Court does not agree. The Washington law mandating rest-periods clearly regulates the hours of work and rest for railroad employees. Plaintiffs argue the Washington ***"Rest Break Regulation . . . is [not] a regulation relating to the 'hours of work and rest of railroad employees.'"*** ECF No. 38 at 8 (emphasis added). Ironically, Plaintiffs' own words demonstrate the opposite point. Plaintiffs' argument that the Washington law is not preempted because the federal law does not regulate rest periods *during* work periods is similarly unavailing. The federal law specifically regulates *consecutive* hours of work, *see* 49 U.S.C. § 20156(3)(H), which necessarily implicates rest periods during the period of work.

Contrary to Plaintiffs' assertion otherwise, the case of *Erie* dictate this end. Plaintiffs attempt to distinguish *Erie* by arguing the regulation in *Erie* directly targeted railroad employees, while the Washington law is of general applicability,

ECF No. 38 at 12, but this distinction is of not import here. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386 (1992) ("this notion" would create "an utterly irrational loophole" and "ignores the sweep of the 'relating to' language" in the statute). Whether or not a regulation specifically calls for regulation of railroad employees or does so generally, the effect is the same, and so is the result with respect to federal preemption. Otherwise, states could avoid field preemption by merely writing laws of general applicability, despite their application to railroad employees. This form over substance argument fails.

Plaintiffs also argue the regulation at issue here is materially different than in *Erie*, but this is not the case. In *Erie*, the law at issue limited railroad employees to an eight-hour work day. As in *Erie*, the Washington law limits the time an employee can be required to work given any four-hour work period. Both laws purport to limit the hours a railroad employee can work consecutively within a specific timeframe. Accordingly, *Erie* is controlling and the Washington law at issue is preempted by federal law as applied to railroad employees.

Plaintiffs otherwise argue that Defendants "ignore that Courts and federal agencies have rejected virtually identical preemption arguments advanced by the trucking and airline industries," EF No. 38 at 8, but the cases cited involve federal laws that did not regulate hours of work and the rail industry is clearly distinguishable from the trucking and airline industry given Congress' thorough

regulation of the railways and the material difference in the preemptive scope at issue in those cases.[1]  Plaintiffs other arguments are similarly unavailing.

B.  **Express Preemption**

Defendants argue the Washington rest period laws are expressly preempted by the FRSA (which incorporates the HSA[2]).  Specifically, Defendants argue that "[e]xpress preemption applies under § 20106 because worker rest is 'related to railroad safety.'"  ECF No. 35 at 29.  Plaintiffs argue the Washington law is not related to railroad safety, but rather concerns "workplace conditions and wages" (ECF No. 38 at 23), and is thus not preempted by the FRSA.

//

---

[1] Plaintiffs' reference to *Dilts v. Penske Logistics, LLC* is unpersuasive, as that case is easily distinguishable because the meal and rest break laws at issue there clearly did not relate to prices, routes, or services – the preemptive scope of the Federal Aviation Authorization Administration Act (FAAAA).  769 F.3d 637, 647 (9th Cir. 2014).  Moreover, the text of the FAAAA's preemption clause includes a broad exception, expressly permitting states to regulate various aspects of motor carriers, including safety.  49 U.S.C. § 14501(c)(2).

[2] In 1994, the HSA and other railroad safety laws were merged into the FRSA. Pub. L. No. 103-272, § 6(a), 108 Stat. 1378; H.R. Rep. 103-180 (1993).

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR JUDICIAL NOTICE ~ 12

1. **Preemptive Reach**

State laws may be preempted where Congress "define[s] explicitly the extent to which its enactments pre-empt state law." *English v. General Electric Co.*, 496 U.S. 72, 78 (1990). "[P]re-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." *Union Pacific R.R. Co. v. Cal. Pub. Util. Comm'n*, 346 F.3d 851, 865 (9th Cir. 2003) (citations omitted). The FRSA "promote[s] safety in every area of railroad operations," 49 U.S.C. § 20101, and authorizes the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety," 49 U.S.C. § 20103(a). The FRSA includes an express preemption provision; the FRSA "requires that 'laws, rules, regulations, orders, and standards, relating to railroad safety shall be nationally uniform to the extent practicable,' and provides that a state may regulate railroad safety only to the extent no federal action has been taken 'covering the subject matter' of the state regulation." *Burlington N. R. Co. v. State of Mont.*, 880 F.2d 1104, 1105 (9th Cir. 1989) (quoting 45 U.S.C. § 434 (1982)).

As discussed above, there is extensive federal regulation governing work and rest periods. This regulation serves the important end of "improve[ing] safety and reduc[ing] employee fatigue." 49 U.S.C. § 21109(a); *see* S. Rep. No. 110-270, at 9 (2008) (federal hours of service laws are intended to "reduce incidents of

fatigue-related accidents, injuries, and fatalities."); 74 Fed. Reg. at 25,330 (the HSA is "intended to promote safe railroad operations by limiting the hours of service of certain railroad employees"). This is the same subject matter the Washington law attempts to regulate, as the Washington Supreme Court has recognized that the state's rest period laws are related to employee safety, health, and welfare. *Wingert v. Yellow Freight Sys., Inc.*, 146 Wash.2d 841, 847 (2002) ("The provisions of chapter 296–126 WAC . . . contain labor standards for the protection of employees' safety, health, and welfare . . . ."). Plaintiffs' characterization of the Washington rest break regulation as regulating "workplace conditions and wages" as opposed to a regulation related to railroad safety is unpersuasive.[3] Accordingly, the Washington law at issue falls within the express preemptive reach of the FRSA as applied to railroad employees.

---

[3] Plaintiffs point to the definition of "Conditions of Labor," Rev. Code. Wash. § 49.12.005(5) (also found at Wash. Admin. Code § 296-126-002(9)), and argue this definition demonstrates the rest-period regulation is not related to safety. ECF No. 38 at 10. Plaintiffs are not correct. The definition does not state the rest-period is not related to safety, but merely states that the definition of "conditions of labor" used in that piece of legislation does not refer to "conditions of labor *otherwise* governed by statutes and rules and regulations relating to industrial

Plaintiffs argue the Washington law is not "related to railroad safety." Plaintiffs argue the law is not "'related to railroads' at all, but is instead generally applicable to all employers and employees in Washington." ECF No. 38 at 16. As with Plaintiffs' argument above, whether a regulation specifically identifies the railroad industry is not determinative of whether the regulation is preempted. The term "related to" is very broad, evidencing Congressional intent to establish a broad preemptive reach. While the law at issue does not expressly target railroad employees, the law does, in fact, relate to railroad safety by regulating the hours of work and rest periods "for the protection of employees' safety, health, and welfare . . . ." *Wingert*, 146 Wash.2d at 847.

Plaintiffs nonsensically argue nothing suggests that the FRSA intended to deal with individual employee welfare, but rather the safety of the rails and cars of the railroad. ECF No. 38 at 24. Plaintiffs contend that "Washington's Rest Break

---

safety and health administered by the department." Rev. Code. Wash. § 49.12.005(5) (emphasis added); Wash. Admin. Code § 296-126-002(9) (same). This undermines Plaintiffs proposed dichotomy of conditions of labor and safety regulations, as it refers to *other* safety regulations as conditions of labor. In any event, the label ascribed to a regulation is not dispositive when determining the reach of an express preemption clause.

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR JUDICIAL NOTICE ~ 15

Regulation is not reasonably related to the safe movement and operation of rail equipment, and therefore does not invade the field that the FRSA intended: railroad safety." ECF No. 38 at 25. Quite the opposite is true, Congress' declared purpose for the FRSA was to both reduce "deaths and injuries to persons" and the reduction of property damage.

### 2. Savings Clause

Section 20106 contains a "savings clause," which provides that "[a] State may adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). It further provides that a state may continue in force a "more stringent" regulation that is "necessary to eliminate or reduce an essentially local safety . . . hazard" so long as the state law is "not incompatible" with federal law and does not "unreasonably burden interstate commerce." *Id.* Plaintiffs have not argued the exceptions apply. Even if the issue were raised, as Defendants correctly note, the first exception does not apply because the FRA has issued a wide range of "regulations" and "orders" on the subject of employee hours of work and rest. ECF No. 35 at 31; *see* 49 C.F.R. Part 228, App. A. The second exception also does not apply, as the Washington law is not aimed at alleviating an essentially local safety hazard.

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR JUDICIAL NOTICE ~ 16

C. **Adamson Act**

Defendants argue the Washington law at issue is preempted by the Adamson Act. Defendants reason that, even if Defendants were required to provide rest periods under state law, Plaintiffs' claims for additional wage compensation for such rest periods would still be preempted by the Adamson Act because "Plaintiffs are claiming that Washington state law obligates Defendants to pay ***additional*** wages, over and above what has been collectively bargained." ECF No. 35 at 35 (emphasis in original).

In 1916, Congress passed the Adamson Act, which established the eight-hour work day for determining the compensation for railroad employees, while leaving the amount and other details of compensation to private negotiations. Adamson Act of 1916, 39 Stat. 721 (codified as amended at 49 U.S.C. § 28301). "Congress's aim in enacting the Adamson Act [] was to provide a uniform workday for railroad employees, yet leave the amount of compensation to labor agreements." *R.J. Corman R.R. Co./Memphis Line v. Palmore*, 999 F.2d 149, 153 (6th Cir. 1993) (citing *Wilson v. New*, 243 U.S. 332, 345–46 (1917) (The Adamson Act leaves "employers and employees free as to the subject of wages to govern their relations by their own agreements . . . ."); *see Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 765 (7th Cir. 2008) ("Congress's intent to leave the matter of wages subject to private negotiations, as articulated by the Court in *Wilson* [*v.*

*New*], particularly when placed against the backdrop of Congress's pervasive regulation of the railways and its clear intent that much of this regulation allow for no state supplement, leads us to conclude that Illinois's overtime regulations, as applied to interstate railways, are preempted.").

This regulatory scheme does not make way for the state regulation at issue. Washington's law on work and rest periods purports to regulate compensation – a matter reserved to statute and private negotiations – by mandating pay for missed rest breaks. This requires the employer to provide additional compensation for missed rest breaks outside of private negotiations. The Court thus finds the Adamson Act preempts the Washington law on work and rest periods as applied to the railroad industry.

Plaintiffs attempt to avoid the Adamson Act preemption by arguing the "Adamson Act only has preemptive force in the context of *compensation for work* (especially overtime work) for railway employees[,]" and that the "Adamson Act, by its own terms, does not speak to the issue of rest breaks during the work day[.]" ECF No. 38 at 36 (emphasis in original). This argument ignores the fact that the Washington law forces the employer to compensate employees for missed rest breaks. This is compensation for work or at least time on the clock and thus falls under the preemptive reach of the Adamson Act, as Plaintiffs concede.

//

# CONCLUSION

Washington's law requiring rest periods as applied to railroad employees is preempted by federal law. Holding otherwise would allow the states to create a patchwork of laws regulating work and rest hours that could, in effect, cripple the way the railroad industry runs or otherwise circumvent the comprehensive framework for determining wages.

**ACCORDINGLY, IT IS HEREBY ORDERED**:

1. Defendants' Motion for Judgment on the Pleadings (ECF No. 35) is **GRANTED**.

2. Defendants' (unopposed) Request for Judicial Notice (ECF No. 36) is **GRANTED**.

3. All remaining deadlines, hearings, and trial are **VACATED**.

The District Court Clerk is directed to enter this Order, provide copies to counsel, enter judgment for Defendants and close the file.

DATED June 13, 2018.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR JUDICIAL NOTICE ~ 19